■ ELIZABETH CAPROTTI, Individually and as Parent of JOHN CAPROTTI et al., Infants, Appellant, v TOWN OF WOODSTOCK et al., Respondents, et al., Defendants. [681 NYS2d 911] —White, J. Appeals (1) from an order of the Supreme Court (Torraca, J.), entered May 14, 1997 in Ulster County, which granted certain defendants' motion for summary judgment dismissing the complaint against them, and (2) from an order of said court, entered June 11, 1997 in Ulster County, which denied plaintiff's motion for reconsideration.

We affirm Supreme Court's determination that a plaintiff who is defamed by materials broadcast over a public access

cable television channel cannot obtain monetary damages from the franchising authority.[1]

In 1984, Congress enacted the Cable Communications Policy Act of 1984 (98 US Stat 2779) which, *inter alia*, authorized franchising authorities to require cable operators to set aside channels for public educational and governmental programming, which channels were intended to be the electronic equivalent of Hyde Park (*see, Daniels Cablevision v United States*, 835 F Supp 1, 6, *affd in part* 93 F3d 957). Commonly, the franchising authority retains a degree of control over these channels through nonprofit organizations or supervising boards that can set programming policy and approve or disapprove particular programming services (*see, Denver Area Educ. Telecom. Consortium v Federal Communications Commn.*, 518 US 727, 759-761).

Congress revisited this field in 1992 when it enacted the Cable Television Consumer Protection and Competition Act of 1992 (106 US Stat 1460). Among the concerns that spawned this legislation were the franchising authorities' potential exposure to monetary damages arising from decisions approving or disapproving a franchise or from determinations implicating the 1st Amendment (Cable Television Consumer Protection and Competition Act of 1992, HR Conf Rep No. 862, 102d Cong, 2d Sess). Congress addressed these concerns by enacting 47 USC § 555a (a), which reads as follows: "In any court proceeding * * * involving any claim against a franchising authority or other governmental entity * * * arising from the regulation of cable service or from a decision of approval or disapproval with respect to a grant, renewal, transfer or amendment of a franchise, any relief * * * shall be limited to injunctive and declaratory relief."

This statutory protocol found expression in the franchising agreement defendant Town of Woodstock entered into with Kingston Cablevision, Inc. (hereinafter Kingston). In return for the franchise, Kingston agreed to provide public access capability to the Town which formed a volunteer committee, defendant Woodstock Public Access Committee (hereinafter WPAC), to operate the station and promulgate rules and regulations governing its operation. According to plaintiffs' complaint, defendant Ronald Rybacki[2] used his weekly program to promote "a vicious campaign of harassment * * * against plaintiffs by making derogatory, inflammatory, obscene and defamatory

---

1. Franchising authorities are governmental entities empowered to grant cable television franchises (47 USC § 522 [9]).

2. Plaintiffs have obtained a default judgment against this defendant.

remarks". Plaintiff Elizabeth Caprotti avers that she implored the Town and WPAC to enforce their regulations and remove Rybacki from the public access channel. Purportedly, because they refused to do so, plaintiffs commenced this action seeking, *inter alia,* compensatory and punitive damages. As indicated, Supreme Court dismissed it on the ground that it was barred by 47 USC § 555a.

Plaintiffs contend that Supreme Court misconstrued 47 USC § 555a, arguing that its only purpose is to protect franchising authorities from damage suits by aggrieved cable operators arising from franchise decisions. We construe the statute more broadly. In our view, the statute not only applies to franchising decisions but, because of its use of the disjunctive word "or", also to claims emanating from determinations relating to the regulation of cable services. We find support for our view in *Coplin v Fairfield Pub. Access Tel. Comm.* (111 F3d 1395), wherein the US Court of Appeals noted that franchising decisions were not the only concern Congress addressed in enacting 47 USC § 555a (*id.,* at 1408, n 7). It then proceeded to preclude a suspended talk show producer from seeking monetary damages against the franchising authorities, reasoning that his claim arose from the regulation of cable services (*id.,* at 1408). Also, as noted in *McClellan v Cablevision of Conn.* (149 F3d 161, 168, n 15), the statute limits a private cause of action to injunctive or declaratory judgment relief.

Likewise, plaintiffs' claim arises from the regulation of cable services as it is predicated upon the Town and WPAC's alleged failure to comply with the applicable rules and regulations governing the station's operation. Although plaintiffs' 1st Amendment rights were not abridged by defendants, the statute nonetheless should be applicable to them since the ability of a public access channel to provide a forum for robust and unrestrained public discourse would be jeopardized if viewers allegedly damaged by such programming could seek monetary damages from franchising authorities. In any event, we note that 47 USC § 555a applies to "any claim". Accordingly, we conclude that plaintiffs may not seek monetary damages from the Town or WPAC.

Finally, as we find that plaintiff's motion for reconsideration was in reality a motion for reargument, the denial of which cannot be appealed (*see, Spa Realty Assocs. v Spring Assocs.,* 213 AD2d 781, 783), plaintiff's appeal of Supreme Court's order entered June 11, 1997 must be dismissed.

Cardona, P. J., Mercure, Spain and Graffeo, JJ., concur. Ordered that the order entered May 14, 1997 is affirmed,

without costs. Ordered that the appeal from order entered June 11, 1997 is dismissed, without costs.